**Bridget FINLEY, Appellant,**

v.

**DBM TECHNOLOGIES; Hon. Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2006–CA–001132–WC.

Court of Appeals of Kentucky.

Jan. 26, 2007.

Russ Wilkey, Owensboro, KY, for appellant.

Michael W. Alvey, Owensboro, KY, for appellee.

Before DIXON and TAYLOR, Judges; KNOPF,[1] Senior Judge.

## OPINION

TAYLOR, Judge.

Bridget Finley petitions this Court to review an opinion of the Workers' Com-

<hr>

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

pensation Board (Board) entered April 28, 2006, affirming a decision of the Administrative Law Judge (ALJ) to deny Finley's claim for income and medical benefits related to the arousal of her congenital scoliosis but awarding income and medical benefits related solely to her work-related back injury. For the reasons stated, we vacate and remand.

Finley was hired as a machine operator at DBM Technologies (DBM) in August 2001. On January 30, 2002, Finley lifted a box weighing approximately thirteen pounds and squatted down to place it on the floor. Finley was immediately unable to stand upright due to pain in her lower back.

The record indicates Finley unsuccessfully attempted to return to work. Finley experienced back pain, right hip pain, and numbness and tingling in her right leg and foot. On February 14, 2002, the severity of Finley's leg numbness allegedly caused her to fall at work.

According to the uncontradicted medical evidence, Finley also suffered from a congenital deformity of the spine known as scoliosis. Additionally, as pointed out by the Board, it was "undisputed that Finley's scoliosis was a dormant abnormality at the time of her work-related injury." Before the injury on January 30, 2002, Finley's congenital scoliosis was both asymptomatic and required no treatment. It was also undisputed that the work injury aroused the scoliosis into a disabling reality.

To remedy her back injury and scoliosis, Finley underwent two surgical procedures. On January 2, 2003, Dr. George Raque performed right L5–6 and L6–S1 laminotomies upon Finley. And, on October 30, 2003, Dr. Steven Glassman performed a complicated L4–S1 fusion upon Finley. After these surgeries, Finley still reported back and leg pain.

Eventually, Finley filed a claim for workers' compensation benefits. Therein, Finley claimed to be totally disabled as a result of the work injury and sought both income and medical benefits.

By opinion entered December 20, 2005, the ALJ concluded:

Based upon the above medical history and the opinions of Dr. [Robert B.] Nickerson and Dr. [Robert] Clendenin, the Administrative Law Judge finds that the scoliosis was a pre-existing condition which was exacerbated by the January 30, 2002 work injury.

However, the Administrative Law Judge further finds that the(sic) Dr. Clendenin has provided the most accurate and authoritive view of the relationship of the pre-existing scoliosis, the work injury, and the two subsequent surgeries. Dr. Clendenin opined that the work injury exacerbated the pre-existing congenital deformity, causing an L5–S1 disc protrusion to the right and resulting in radicular pain and requiring the January 2, 2003 L5–S1 diskectomy and decompression surgery.

Dr. Glassman, the treating orthopedic surgeon, reported that the subsequent fusion surgery was performed to correct the congenital malalignment of Ms. Finley's lumbosacral spine. Based upon the expert opinion of Dr. Clendenin, it is found that Ms. Finley's January 2, 2003 surgery was the result of the work-related injury, but that the lumbar fusion and all subsequent medical treatment was for treatment and revision of the pre-existing congenital deformity, rather than for the cure and relief of the work injury.

Similarly, the reasonableness and necessity of the medical treatment afforded Ms. Finley should be apportioned in like manner. The January 2, 2003 surgery was reasonable and necessary for

treatment of the work injury, but the subsequent fusion surgery was not reasonable or necessary treatment for that injury. Therefore, DBM shall be liable for payment of all medical expenses arising from the January 2, 2003 injury and for treatment prior to the fusion surgery. The lumbar fusion surgery changed some of her symptomatology, and it cannot be found that the surgery, post-surgical treatment, or other medical expenses for treatment of either the effects of the fusion surgery or the treatment of scoliosis are the responsibility of DBM.

. . . .

In this case, the Administrative Law Judge adopts Dr. Clendenin's expert opinion that the work injury resulted in a 10% permanent impairment under the most recent edition of the AMA *Guides*, and that the remainder of her impairment rating is nonwork-related. . . .

The ALJ specifically found that the scoliosis was a "pre-existing condition." The ALJ also found that the laminotomies were reasonable and necessary for the treatment of the work-related injury. However, the ALJ found that the fusion surgery was solely for the treatment of the pre-existing congenital scoliosis "rather than for the cure and relief of the work injury." Ultimately, the ALJ held that Finley was not entitled to recover medical expenses related to the fusion surgery. In particular, the ALJ held that "DBM shall be liable for payment of all medical expenses arising from the January 2, 2003, injury and for treatment prior to the fusion surgery."

Upon the extent of Finley's work-related impairment, the ALJ assessed a ten percent permanent impairment rating and viewed the remainder of her impairment as nonwork-related. In reaching this conclusion, the ALJ specifically relied upon the expert opinion of Dr. Clendenin, who performed an independent medical examination of Finley.

Although not referenced in the ALJ's opinion, Dr. Clendenin believed that Finley actually qualified for a twenty-three percent permanent impairment rating. Dr. Clendenin apportioned ten percent as caused directly by the work-related injury and thirteen percent as caused by the congenital scoliosis.

Being unsatisfied with the award, Finley sought review with the Board. By opinion entered April 28, 2006, the Board affirmed the ALJ's award.

Finley contends that the permanent impairment and medical expenses directly attributable to her congenital scoliosis are compensable. Finley asserts her congenital scoliosis constitutes a pre-existing dormant condition that was permanently aroused into a disabling reality by the work-related injury; thus, any permanent impairment or medical expense incurred as a result of such arousal is compensable. Finley stresses that her congenital scoliosis was both asymptomatic and non-disabling prior to the work-related injury. It was only after the work injury that the dormant condition became active and required treatment. Finley argues the evidence compels a finding that the congenital scoliosis was permanently aroused by the work-related injury.

On appellate review, the ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding. *Bullock v. Peabody Coal Co.*, 882 S.W.2d 676 (Ky.1994). However, the ALJ's and the Board's application of the law are reviewed *de novo*. *Combs v. Gaffney*, 282 S.W.2d 817 (Ky.1955); *Hardy–Burlingham Mining Co. v. Hurt*, 238 Ky. 589, 38

S.W.2d 460 (1931); *Sears Roebuck & Co. v. Dennis*, 131 S.W.3d 351 (Ky.App.2004).

■ It is well-established that the work-related arousal of a pre-existing dormant condition into disabling reality is compensable. *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854 (Ky.2001). In its opinion, the Board correctly and succinctly set forth the law upon compensability of a pre-existing dormant condition:

What then is necessary to sustain a determination that a pre-existing condition is dormant or active, or that the arousal of an underlying pre-existing disease or condition is temporary or permanent? To be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA *Guidelines* immediately prior to the occurrence of the work-related injury. Moreover, the burden of proving the existence of a pre-existing condition falls upon the employer. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky.App.1984).

Alternatively, where the underlying pre-existing disease or condition is shown to have been asymptomatic immediately prior to the work-related traumatic event *and* all of the employee's permanent impairment is medically determined to have arisen after that event—due either to the effects of the trauma directly or secondary to medical treatment necessary to address previously nonexistent symptoms attributable to an underlying condition exacerbated by the event—then as a matter of law the underlying condition must be viewed as previously dormant and aroused into disabling reality by the injury. Under such circumstances, the injured employee must be compensated not just for the immediate physical harm acutely produced by the work-related trauma, but also for all proximate chronic effects cor-responding to any contributing pre-existing condition, including any previously dormant problem strictly attributable solely to congenital or natural aging processes, as it relates to the whole of her functional impairment and subsequent disability rating, including medical care that is reasonable and necessary pursuant to KRS 342.020.

The arousal of a pre-existing dormant condition into disabling reality may be considered temporary when, upon attaining maximum medical improvement, the employee post injury fully recovers and reverts to her pre-injury state of health. However, where the trauma *or* the underlying pre-existing defect exacerbated by the trauma results in a permanent impairment rating post injury, even though secondary to surgery or other medical treatment, the totality of the effects of the employee's condition must be judged compensable as a matter of law.

■ To summarize, a pre-existing condition that is both asymptomatic and produces no impairment prior to the work-related injury constitutes a pre-existing dormant condition. When a pre-existing dormant condition is aroused into disabling reality by a work-related injury, any impairment or medical expense related solely to the pre-existing condition is compensable. A pre-existing condition may be either temporarily or permanently aroused. If the pre-existing condition completely reverts to its pre-injury dormant state, the arousal is considered temporary. If the pre-existing condition does not completely revert to its pre-injury dormant state, the arousal is considered permanent, rather than temporary. With these legal principals in mind, we shall undertake a review of the ALJ's award.

■ The ALJ specifically found that "the scoliosis was a pre-existing condition

which was exacerbated by the January 30, 2002, work injury." The ALJ, however, failed to make specific findings of fact upon whether the congenital scoliosis was a dormant condition and whether the scoliosis was temporarily or permanently aroused by the work-related injury. Given that the medical evidence was undisputed, we believe the ALJ was compelled to find that the scoliosis constituted a pre-existing dormant condition. *See Powell v. Winchester Garment Co.,* 312 Ky. 38, 226 S.W.2d 341 (1950); *Melcher v. Drummond Mfg. Co.,* 312 Ky. 588, 229 S.W.2d 52 (1950).

■■■ As to whether the scoliosis was temporarily or permanently aroused, a review of the record reveals that the medical evidence overwhelmingly demonstrated that Finley's scoliosis was permanently aroused and resulted in permanent impairment. However, one medical expert, Dr. Michael Best, opined that Finley's scoliosis was only temporarily aroused but then inexplicably assigned a five percent permanent impairment rating due to the scoliosis.

In any event, we conclude that the ALJ erroneously failed to make an essential finding of fact upon whether Finley's preexisting dormant scoliosis was temporarily or permanently aroused by the work-related back injury. As a reviewing body, neither we nor the Board should attempt to supplant such a finding of fact. *See Bright v. American Greetings Corp.,* 62 S.W.3d 381 (Ky.2001); *Aden Min. Co. v. Hall,* 252 Ky. 168, 66 S.W.2d 41 (1933); *Rudd v. Ky. Mfg. Co.,* 574 S.W.2d 928 (Ky.App.1978). We would also caution the ALJ that the scoliosis must have completely reverted to a dormant state to support a finding of temporary arousal.

Upon remand, the ALJ should reconsider the evidence as a whole and make a finding of fact upon whether Finley's pre-existing scoliosis was temporarily or permanently aroused by the work-related back injury. If the ALJ finds that the scoliosis was permanently aroused, Finley would be entitled to recover benefits for any medical treatment and for any permanent impairment directly attributed to the arousal of the scoliosis. On the other hand, if the ALJ finds that the scoliosis was merely temporarily aroused, Finley would be entitled to only recover benefits for medical treatment of the scoliosis while temporarily aroused but would not be entitled to recover benefits for medical treatment thereafter. Under the later scenario, Finley would not recover benefits for permanent impairment attributed to the scoliosis because no such impairment would exist.

For the foregoing reasons, the opinion of the Workers' Compensation Board is vacated and this cause remanded for proceedings consistent with this opinion.

ALL CONCUR.