RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2019-SC-0370-WC

VIWIN TECH WINDOWS & DOORS, INC                    APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0106
WORKERS' COMPENSATION BOARD
NO. 15-WC-78481

MARK E. IVEY;                                        APPELLEES
HONORABLE MONICA J. RICE-SMITH,
ADMINISTRATIVE LAW JUDGE AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE VANMETER**

**REVERSING AND REMANDING**

In determining workers' compensation benefits for partial disability, the legislature has directed that those benefits are based on the percentage of whole-body impairment as determined by the latest edition of the American Medical Association *Guides to the Evaluation of Permanent Impairment* ("AMA Guides"). KRS[1] 342.0011(35), (37). The sole issue in this case is whether Mark Ivey's pre-employment lower back disc herniation and two surgeries required an impairment rating to be carved out of his permanent partial disability rating for which his employer, ViWin Tech, would be responsible. We hold that such

---

[1] Kentucky Revised Statutes.

carve-out is required, and therefore remand this matter to the Workers' Compensation Board ("Board") for remand to the Administrative Law Judge ("ALJ") to make a factual determination of that carve out percentage in accordance with the AMA Guides.

## I.    Factual and Procedural Background.

Ivey had a history of back problems which were surgically corrected by Dr. Theodore Davies. From Dr. Davies' operative reports in 2004, he reported "myeogram and CAT scan showed disk herniation 4-5 to the left." He diagnosed lumbar disc displacement with lumbar radiculopathy. In September of that year, Dr. Davies performed a left L4-5 hemilaminotomy with discectomy. In 2012, Dr. Davies again diagnosed "recurrent lumbar disc displacement with lumbar radiculopathy." On April 10, 2012, he performed a left L4-5 hemilaminotomy and foraminotomy with discectomy.

Following the April 2012 surgery, Ivey's employment with ViWin Tech as a shipping manager began in September 2012. His job required the supervision of other workers, but also lifting and loading doors and windows. By Ivey's testimony, and as found by the ALJ, he had no pain and was asymptomatic. In June 2015, however, while lifting a box, he felt a sharp pain in his low back.

Following this injury, Ivey was referred to Dr. Rex Arendall. The ALJ received into evidence Dr. Arendall's treatment records from September 2015 through February 16, 2018. The record discloses that all information from Dr. Arendall was presented by treatment records, and by three letters. In

2

summary, and as found by the ALJ, Dr. Arendall performed three surgeries on Ivey's back (December 2015, May 2017, and June 2017), all of which involved procedures primarily on L4-5 and secondarily on L3-4.  The ALJ noted three letters from Dr. Arendall.  In the first, dated August 2017,

> Dr. Arendall explained **Ivey suffered three lumbar disc herniations due to his work-related injury.  There were three recurrent disc herniations at the same level -  one in 2004, the second in 2012, and the third in 2015.**  Subsequently due to the herniations at L4-5, Ivey developed spondylolisthesis at L4-5 due to the failure of that L4-5 disc that resulted in the L4 vertebra slipping forward over the L5 vertebra.  Dr. Arendall explained Ivey's last surgery was a two staged procedure to address the spondylolisthesis, which is the best treatment for that problem.  He opined it was reasonable and necessary treatment and was directly related to his work injury.

(emphasis added).  Dr. Arendall's letter in the record contains the highlighted language above.  This letter is somewhat incongruous in that it recounts three "disc herniations due to his work-related injury" and then states two, 2004 and 2012, predated the 2015 herniation.

The record reflects in Dr. Arendall's second letter, dated November 3, 2017, he assigned Ivey a 28% whole person impairment as a result of the injuries received from the work injury.[2]  Dr. Arendall did not state an impairment rating as a result of the prior two surgeries.

---

[2] The substance of Dr. Arendall's November 3, 2017 stated,

> I have reviewed my file for this patient and have enclosed a copy of it for you.  In my opinion within a reasonable degree of medical certainty, based upon the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, page 384, Table 15-3, the patient retains a 28% impairment of the whole person, as a result of the injuries received from the work related injury.  He suffered four recurrent ruptured lumbar discs at L4-5, and that resulted in spondylolisthesis L4-5 when that disc failed and allowed the L4 vertebra to slip forward over the L5 vertebra.

Finally, in Dr. Arendall's third letter, dated in February 2018, he explained why he utilized the DRE,[3] as opposed to range of motion, method in rating Ivey's injury, and why he believed Ivey's pre-existing back injury was dormant and asymptomatic after the 2012 surgery.[4] As recounted by the ALJ,

> Dr. Arendall explained the AMA Guides specifically provide that the DRE method is the principle [sic] method to use when an individual has had a distinct injury. Ivey suffered from a specific injury on June 23, 2015. Further, the AMA Guides specifically provide that if the impairment can be well characterized by the DRE method, the evaluator should use the DRE method. Dr. Arendall believes lvey's condition is well characterized by the DRE method. Dr. Arendall acknowledged the range of motion method could also be used. The AMA Guides provide that where both methods can be used the evaluator is to evaluate the individual under both and award the higher rating. He advised in Ivey's

---

This was due to instability at that joint due to his L4-5 disc failure which again was due to his work injury. He has been treated with medications, physical therapy, and his last surgery was an instrumented lumbar fusion. His condition is permanent and he should avoid pushing, pulling or lifting over 25 pounds on a repetitive basis. The patient has reached maximum medical improvement.

[3] Diagnosis Related Estimate.

[4] Dr. Arendall explained his use of the AMA Guides,

> I imposed an impairment rating of 28% based on DRE lumbar category V. The AMA Guides specifically provide that the DRE method is the principle [sic] method to use when an individual has had a distinct injury. Mr. Ivey suffered from a distinct injury on June 23, 2015. Further the AMA Guides specifically provide that if the impairment can be well characterized by the DRE method, the evaluator should use the DRE method. Mr. Ivey's condition is well characterized by DRE category V. Because Mr. Ivey has had surgeries at multiple levels in the lumbar spine and has had multiple surgeries, the range of motion can also be utilized to determine Mr. Ivey's impairment. The AMA Guides provide on page 380 that in instances where the range of motion method and the DRE method can both be used, the evaluator is to evaluate the individual under both methods and award the higher rating. . . . It is my opinion that both the DRE method and the range of motion method can be used to rate Mr. Ivey's impairment. The DRE method provides the higher impairment rating and therefore, pursuant to the express dictates of the AMA Guides, the DRE method is the proper method to be used in rating Mr. Ivey's impairment.

situation both methods can be used, the DRE provides the higher impairment and is the proper method.

Again Dr. Arendall failed to address explicitly whether any portion of Ivey's injury was pre-existing under the AMA Guides.

The ALJ also received a medical report and deposition from Dr. Ellen Ballard. In a deposition, Dr. Ballard testified that following the 2004 surgery, Ivey would have had at least a 10% impairment, would have had impairment following the 2012 surgery, and would have had impairment at the time of the 2015 surgery.[5] She testified that the source of that testimony was the AMA Guides, Table 15.3, page 394, indicating an impairment of DRE category 3, with a range of 10 to 13%. Her testimony agreed that DRE was the appropriate method to determine impairment, and that if Ivey did not require medication, was working with heavy lifting with no pain, and not seeking a doctor, then he was asymptomatic for some time prior to June 23, 2015.

Finally, the ALJ heard testimony from Dr. Thomas O'Brien who believed Ivey did not have a work-related injury at all, but that his condition was a manifestation of degenerative disc disease. Nevertheless, Dr. O'Brien testified that Ivey would have an impairment prior to June 23, 2015, because of his pre-existing condition and prior surgeries. Specifically, he testified that Ivey's

---

[5] Dr. Ballard in her deposition explained that a "discectomy" cuts off a herniated disc as much as possible; that a "laminotomy" cuts into the lamina, chipping it away so that the surgeon can see the disc; and, finally, that a "foraminotomy" cuts some of the bone away from the foramen, the hole where the nerve root comes out, to make that hole bigger. She affirmed that these anatomical changes are permanent.

permanent impairment[6] prior to the June 23, 2015, work injury was 12% based on range of motion method. AMA Guides, Table Dr. O'Brien stated that the range of motion method was recommended for patients who had had multiple surgeries. But he also testified using the DRE method, albeit not recommended, Ivey's pre-injury impairment would be between 10%-13%.[7] Dr. O'Brien testified if Ivey was asymptomatic he would have a 10% pre-surgery impairment.

The ALJ found that Ivey had two lower back surgeries, but that his condition was asymptomatic prior to his work injury on June 23, 2015. The ALJ further found that the injury was recurrent herniation at L4-5. The ALJ assigned a whole-person impairment of 28% based on Dr. Arendall's opinion as Ivey's treating physician, including that DRE was the appropriate method for assessing the Ivey's impairment. The ALJ rejected a carve-out for the pre-existing injury, holding that was appropriate only if the condition was "both symptomatic and impairment-ratable immediately before a work-related injury[,]" relying on *Finley v. DBM Technologies*, 217 S.W.3d 261 (Ky. App. 2007). ViWin Tech filed a Petition for Reconsideration, which the ALJ denied.

ViWin Tech appealed to the Board, which affirmed the ALJ's decision and interpretation of *Finley*. ViWin Tech next filed its Petition for Review with the

---

[6] Like Dr. Ballard, Dr. O'Brien testified that the prior discectomy and laminectomy, as well as resulting scar tissue, result in permanent changes to the spine.

[7] Dr. O'Brien testified that for a first distinct injury, DRE is appropriate; for subsequent distinct injuries to the same level, range of motion is recommended.

Court of Appeals, which similarly affirmed. ViWin Tech has now filed its Petition for review with this Court.

## II. Standard of Review.

The well-established standard of review for the appellate courts of a workers' compensation decision "is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992). *See also Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986) (if the fact-finder finds in favor of the person having the burden of proof, the burden on appeal is only to show that there was some substantial evidence to support the decision); *but see Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005) (if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding"). Our case law further recognizes that the employer has the burden of proving a pre-existing injury. *Comair, Inc. v. Helton*, 270 S.W.3d 909, 914 (Ky. App. 2008).

## III. Analysis.

In this case, ViWin Tech does not contest the work-relatedness of Ivey's June 23, 2015, injury, nor the 28% whole-person impairment rating assigned by the ALJ. Instead, it claims that the ALJ, as well as the Board and the Court of Appeals, misapplied the law relating to the carve-out as required by the AMA Guides and the decision in *Finley*. We agree with ViWin Tech.

7

KRS 342.730(1)(b) sets forth the formula for establishing the income benefit for permanent partial disability. Within the formula, the legislature has provided multiplication "by the permanent impairment rating caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment[.]'"[8] "Permanent impairment rating" is defined as "percentage of whole body impairment caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment[.]'" KRS 342.0011(35). Under KRS 342.730(1)(e), for permanent partial disability, impairment due to a nonwork-related disability may not be considered. The legislature further has directed the American Medical Association's fifth edition to govern these determinations. KRS 342.0011(37)(a).

---

[8] The formula set out in KRS 342.730(1)(b) states in full:

For permanent partial disability, sixty-six and two-thirds percent (66-2/3%) of the employee's average weekly wage but not more than eighty-two and one-half percent (82.5%) of the state average weekly wage as determined by KRS 342.740, multiplied by the permanent impairment rating caused by the injury or occupational disease as determined by the "Guides to the Evaluation of Permanent Impairment," times the factor set forth in the table that follows:

| AMA Impairment | Factor |
|---|---|
| 0 to 5% | 0.65 |
| 6 to 10% | 0.85 |
| 11 to 15% | 1.00 |
| 16 to 20% | 1.00 |
| 21 to 25% | 1.15 |
| 26 to 30% | 1.35 |
| 31 to 35% | 1.50 |
| 36% and above | 1.70 |

Under the AMA Guides, Table 15.3 specifically states that a person is to be rated with lumbar DRE III (10 to 13%) impairment if he has "history of a herniated disc at the level and on the side that would be expected from objective clinical findings, and/**or individuals who had surgery for radiculopathy but are now asymptomatic**." AMA Guides at 384 (emphasis added). Thus, based on a plain reading of the statutes and the Guides, the ALJ erred in concluding that a carve-out was unwarranted.

Further, the ALJ's reliance on *Finley* was misplaced. In *Finley*, the injured worker suffered from a congenital deformity of the spine known as scoliosis. 217 S.W.3d at 263. The undisputed proof was that before her workplace injury, her "congenital scoliosis was both asymptomatic and required no treatment." *Id.* The *Finley* court held that "a pre-existing condition that is both asymptomatic and produces no impairment prior to the work-related injury constitutes a pre-existing dormant condition." *Id.* at 265; *see also McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854, 858–59 (Ky. 2001) (holding that worker's injury was compensable notwithstanding arousal of prior, dormant degenerative condition for which he had never been treated). The difference between this case and *Finley* is that Ms. Finley had a dormant, asymptomatic congenital condition. She had never been treated. On the other hand, Ivey had undergone two prior surgeries at the precise location, L4-5, that his workplace injury occurred. Although he was asymptomatic, under the AMA Guides, he had an impairment rating because of the prior surgeries. We find it completely illogical to conclude that a worker who has had two prior surgeries

9

of the type Ivey had and who reinjures himself at the precise same location can be said not to have a pre-existing condition. Accordingly, the ALJ erred in concluding otherwise.

Ivey cites our recent opinion in *Wetherby v. Amazon.com,* 580 S.W.3d 521 (Ky. 2019) as our affirmation of the standard in *Finley* that "[i]n order for a condition to be deemed pre-existing and active, it must be symptomatic and impairment ratable immediately prior to the work injury." *Id.* at 527 (citing *Finley,* 217 S.W.3d at 265). A closer reading of *Wetherby,* however, reveals our approval of that ALJ's deduction for prior injury based on the AMA Guides, notwithstanding (i) Wetherby's testimony that he was asymptomatic, (ii) the absence of any medical records between his prior surgery and his work injury, (iii) the lack of restrictions on his work and (iv) the ALJ's finding that a different part of the spine was injured. 580 S.W.3d at 527. In fact, we stated that "[u]nder *Finley* it was not an active pre-existing condition but it also did not qualify as a dormant condition aroused by the 2012 injury because 'all of the employee's permanent impairment' could *not* be 'medically determined to have arisen after that event,' *i.e.,* the 2012 Amazon injury." *Id.* (quoting *Finley,* 217 S.W.3d at 265). Like Wetherby, Ivey was asymptomatic, but he was also "medically" ratable as impaired under the AMA Guides prior to his June 23, 2015 injury. 580 S.W.3d at 527. While the ALJ in *Wetherby* did not apply *Finley,* and we affirmed its inapplicability, we also stated that the deduction for the prior injury was "a requirement of the AMA Guides regarding spinal impairment," noting that KRS 342.730(1)(b) "governs the calculation of

10

permanent partial disability benefits and part of the calculation is 'the permanent impairment rating caused by the injury or occupational disease as determined" by the AMA Guides. 580 S.W.3d at 528.[9] So it is in this case as well.

## IV.    Conclusion.

Based on the foregoing, the decisions of the Board and the Court of Appeals affirming the ALJ are reversed. This matter is remanded to the Board with instructions to remand to the ALJ to determine the impairment rating carve-out as required under the AMA Guides for Ivey's prior back surgeries.

All sitting. Minton, C.J.; Conley, Hughes, Lambert and VanMeter, JJ., concur. Keller and Nickell, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Donald Cameron Walton, III
Ward, Hocker & Thornton, PLLC

COUNSEL FOR APPELLEE, MARK E. IVEY, III:

Jeffery Allen Roberts
Roberts Law Office

---

[9] We concluded our opinion in *Wetherby*, stating:

> This case is atypical in that the employee's pre-existing medical condition cannot be classified as either active or dormant. Ultimately the condition is unrelated to the current injury but under the AMA Guides for assessing spinal impairment it cannot be ignored by an examining physician, *i.e.*, it must be accounted for in determining spinal impairment. . . . While *Finley* is controlling law, it cannot contradict the statutorily-mandated AMA Guides.

580 S.W.3d at 530.

11

COUNSEL FOR APPELLEE, MONICA K. RICE-SMITH:

Not represented by counsel


COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey
Kentucky Workers' Compensation Board


COUNSEL FOR AMICUS CURIAE:

Geordie Dean Garatt
Housman, Garatt & Duncan, PLLC