SQUARE D COMPANY, Appellant,

v.

Bertha L. TIPTON; Special Fund; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 92–SC–743–WC.

Supreme Court of Kentucky.

July 1, 1993.

Rehearing Denied Oct. 28, 1993.

Mark J. Hinkel, Landrum & Shouse, Lexington, for appellant.

Mark A. Sipek, Louisville, for appellee Tipton.

David Randall Allen, John E. Stephenson, Louisville, for appellee Special Fund.

## OPINION OF THE COURT

This case concerns the standard by which an employer must prove that a medical treatment for which an injured worker seeks compensation benefits is not reasonable or is not necessary for the cure and relief of the effects of the injury. KRS 342.020.

On February 18, 1986, claimant, an assembly line worker, left work due to pain in her

right wrist and sought medical attention. During the next 15 months, she was placed on light duty, the pain increased, and her right elbow and shoulder became affected. Eventually, her left shoulder also became painful. During this time she was paid temporary, total disability benefits for two periods, totalling approximately 3½ months. Then, on May 14, 1987, she quit working altogether. Her employer paid voluntary benefits until April 12, 1989.

Claimant was treated by a number of physicians and a chiropractor and began consulting Dr. E. Atasoy, a hand surgeon, in February, 1987, before she quit working. Dr. Atasoy diagnosed thoracic outlet compression, radial tunnel compression, and radial epicondylitis. X-rays were unremarkable, and nerve conduction studies were normal. In June, 1987, he performed a radial tunnel release, which claimant testified relieved much of the pain in her elbow. Claimant received scalene muscle injections on January 29, 1988, and on February 13, 1988, which failed to relieve the wrist and shoulder problems. Dr. Atasoy explained that when the thoracic outlet space is compressed, the nerves which pass through that area can become entrapped, causing pain. In April, 1988, he performed a right, first rib resection, a procedure which involves removing the rib and some muscle tissue, in an attempt to relieve claimant's right wrist and shoulder symptoms. In July, 1988, claimant was given an injection of cortisone for wrist discomfort. Claimant testified that, while her neck movement was improved by the surgery, her wrist and shoulder pain have remained unchanged.

Finally, in March, 1989, Dr. Atasoy recommended that claimant undergo a scalenectomy, the surgical removal of the scalene muscle in the right side of her neck. The goal of the procedure was to decompress the nerves and blood vessels in the thoracic outlet and to thereby relieve claimant's continuing symptoms. When her employer's insurance company refused to pay for the proposed procedure and, on April 12, 1989, stopped paying voluntary benefits, the instant claim ensued.

The ALJ reviewed all of the medical evidence and concluded that the more persuasive testimony established that the scalenectomy was neither reasonable nor necessary for the cure and relief of claimant's condition as required by KRS 342.020. Claimant was awarded a 60% occupational disability benefit. The decision was affirmed by the Workers' Compensation Board (Board).

The Court of Appeals reversed, however, because it believed that the testimony of each of the three doctors who testified for the defense was flawed. The Court also held that "the proper test for reasonableness is whether a competent physician and an informed patient may reasonably believe that the benefits of the proposed procedure are such as to outweigh the risks."

We have considered each of the three "flaws" in the medical evidence cited by the Court of Appeals. However, after reviewing the evidence in its entirety and the opinion of the ALJ, we believe that the Court of Appeals usurped the role of the fact finder regarding both the facts and the inferences to be drawn from the medical evidence. The ALJ, as the finder of fact, and not the reviewing court, has the sole authority to determine the quality, character, and substance of the evidence. *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985). Where, as here, the medical evidence is conflicting, the question of which evidence to believe is the exclusive province of the ALJ. *Pruitt v. Bugg Brothers,* Ky., 547 S.W.2d 123 (1977).

We also disagree regarding the standard by which KRS 342.020 requires an ALJ to determine the compensability of a medical procedure or treatment. KRS 342.-020(1) allows a worker to choose her own physician and to have whatever medical treatment is reasonably necessary for the cure and/or relief of her injury. The burden of proving that a treatment is unreasonable is on the employer. *National Pizza Co. v. Curry,* Ky.App., 802 S.W.2d 949 (1991). While the injured worker must be given great latitude in selecting the physician and treatment appropriate to her case, the worker's freedom of choice is not unfettered. KRS 342.020(3) indicates that the legislature did not intend to require an employer to pay

for medical expenses which result from treatment that does not provide "reasonable benefit" to the injured worker. An employer may not rely on this section simply because he is dissatisfied with the worker's choice, for example, or because the course of treatment is lengthy, costly, or will not provide a complete cure. We believe, however, that this section relieves an employer of the obligation to pay for treatments or procedures that, regardless of the competence of the treating physician, are shown to be unproductive or outside the type of treatment generally accepted by the medical profession as reasonable in the injured worker's particular case. We also believe that such decisions should be made by the ALJs based on the particular facts and circumstances of each case, so long as there is substantial evidence to support the decision.

In *National Pizza, supra,* cited by the court, the disputed treatment had already been performed. While the treatment appeared to provide the worker with only limited relief, the employer was required to pay for it because the worker had testified that it provided some relief; whereas, the employer had introduced no evidence that the treatment was not considered by the medical profession to be a reasonable course of treatment for the worker's condition and no evidence that the treatment was ineffective.

■ In the instant case, the procedure had not yet been performed. All the physicians who testified, including Dr. Atasoy, agreed that the procedure was controversial within the medical community. Unlike the employer in *National Pizza, supra,* this employer introduced evidence from three board certified orthopedic surgeons, all of whom, like Dr. Atasoy, specialized in surgery of the hand and upper extremities. As noted by the ALJ, one of these physicians had been consulted independently by the worker for a second opinion regarding the proposed surgery. They provided testimony that the procedure was dangerous and severe in nature; that this worker exhibited no objective signs of nerve compression in the thoracic outlet such as would justify considering the procedure; that the procedure was not recommended absent such objective evidence; and

that personal observation of patients referred for the procedure and the medical literature both indicated that the procedure was only marginally effective in any event. None of these physicians believed that the claimant would benefit from the procedure; and, in fact, one believed that additional surgery would be detrimental to her well-being.

Under these circumstances, we believe that the ALJ's decision that the proposed surgery was neither reasonable nor necessary for the cure and relief of this worker's condition and that the employer should, therefore, not be required to pay for the procedure was supported by substantial evidence. It should not have been disturbed on appeal. Accordingly, the decision of the Court of Appeals is hereby reversed, and the decision of the Administrative Law Judge is reinstated.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS and LAMBERT, JJ., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

In a well-considered, carefully written opinion in this case, the Court of Appeals defined and applied the correct standard for deciding whether the employer should pay for the surgery the employee has decided to undergo to treat her injury, on the advice of her attending physician.

As the Court of Appeals duly notes, the statute covering medical treatment at the expense of the employer, KRS 342.020, specifies that "the employer shall pay for the cure and relief," and that "[t]he employee may select the physician to treat his injury, and the hospital in which he shall be treated." It is undisputed the employee selected a highly qualified specialist, and her doctor believes there is a reasonable likelihood the treatment will be of benefit.

KRS 342.020(3) permits the employer the right to select the mode of treatment only if the employer proves:

"... that, because of the physician selected by the employee to treat his injury or

disease, or because of the hospital selected by the employee in which he is being treated, that the employee is not receiving proper medical treatment and his recovery is being substantially affected or delayed; or that the funds for his medical expenses are being spent without reasonable benefit to the employee; or that because of the physician selected by the employee or because of the type of medical treatment being received by the employee that the employer will substantially be prejudiced in any compensation proceedings resulting from the employee's injury or disease; ...."

The Court of Appeals states and resolves the issue in the present case as follows:

"The issue in this case concerns what is reasonable medical treatment. More precisely, the primary issue is: when is a proposed course of treatment so risky or so lacking in benefit to the patient that an employer should not be required to pay for the treatment under KRS 342.020? The burden of proving the unreasonableness of medical treatment is on the employer. *See National Pizza Co. v. Curry*, Ky.App., 802 S.W.2d 949 (1991). So, the ultimate question is whether Square D has met its burden of proof in proving the scalenectomy to be performed by Dr. Atasoy is unreasonable. That is, may an employer sustain its burden simply by having [other] doctors state that *they* would not recommend or perform the proposed procedure?" [Emphasis original.]

The Court of Appeals' Opinion then carefully reviews the evidence. Dr. Atasoy, the employee's attending physician and surgeon, is very competent and highly respected in his field, but three physicians giving evidence for the employer testify *they* do not believe the contemplated procedure is of likely benefit. The Court of Appeals concludes:

"Their opinions are not really on point, however. An employee is entitled to medical treatment which will provide reasonable relief even when no cure is possible. KRS 342.020(1). Such treatment is required even though it can do no more than *ease* the employee's pain and discomfort. *National Pizza Co. v. Curry, supra.* The fact that the treatment will not render the employee painfree and ready-to-work does not make the treatment unreasonable. *See id.* Moreover, we do not believe that a treatment must achieve some given percentage of effectiveness before it becomes reasonable.... Therefore, we hold that the proper test for reasonableness is whether a competent physician and an informed patient may reasonably believe that the benefits of the proposed procedure are such as to outweigh the risks."

The Court of Appeals' Opinion states the proper test, and the Court of Appeals properly decided that the evidence compelled the conclusion that in this case the proposed treatment met this test. The Administrative Law Judge had no right to play "big brother" in deciding for the employee whether to undergo medical treatment prescribed by her own qualified physician simply because other physicians testifying for the employer dispute the statistical probability of benefit.

As the Court of Appeals correctly stated: "The language in the statute exhibits a strong preference in allowing the employee and her physician to select the appropriate treatment. *See* KRS 342.020. The testimony cited by the ALJ in this case respecting the scalenectomy does not meet the standards outlined above. Thus, it cannot be considered as substantial evidence supporting the denial of the scalenectomy. [Citations omitted.]"

Our decision permits an employer to put in issue an employee's right to competent medical treatment for her injury simply by getting a second opinion. We are interfering with the employee's right to decide for herself, with the advice of her doctor, whether to undergo surgery, when there is no proof that her decision is unreasonable. The only proof here is that other physicians have testified that in their opinion the prospect of benefit does not justify requiring the employer to pay for the procedure. This is not the test. This Opinion sends the wrong message.

COMBS and LAMBERT, JJ., join this dissent.