# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 23, 2014
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000037-WC

FINAL

DATE 11-13-14 EmAGrouth.C

EPI CORPORATION                                                      APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2013-CA-000565-WC
WORKERS' COMPENSATION NO. 05-85559

JENNIFER BOLING;
HONORABLE ALLISON E. JONES,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                       APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, EPI Corporation, appeals from a Court of Appeals decision which affirmed the denial of a motion to reopen Jennifer Boling's workers' compensation award. EPI argues on appeal that the Administrative Law Judge's ("ALJ") finding that Boling's impairment rating did not change was not supported by credible or reliable evidence and that she conducted an erroneous *Fawbush v. Gwinn,* 103 S.W.3d 5 (Ky. 2003) analysis. For the below stated reasons, we affirm the Court of Appeals.

Boling injured her right thumb in April 2005 while working for EPI as a physical therapy assistant. The injury occurred when a patient fell back onto Boling's hand, dislocating her thumb. Boling's right hand swelled to the point

that she was unable to make a fist. She was taken off work and referred to the Kleinert Kutz Hand Care Center where she was placed under the care of Dr. Warren C. Breidenbach. Later Boling began to suffer additional symptoms, including drops in blood pressure and passing out. Dr. Breidenbach believed that Boling suffered from dystrophy which was related to the thumb injury. Dr. Donald Wood diagnosed Boling with reflex sympathetic dystrophy ("RSD")[1] (also known as CRPS) caused by her thumb injury. Dr. Wood also believed Boling might suffer from postural orthostatic tachycardia syndrome ("POTS").[2]

Boling filed for workers' compensation in December 2006. A university evaluation was performed by Dr. Robert B. Nickerson. He found that Boling sustained a right thumb ligament injury in April 2005 which led her to develop

---

[1] RSD or CRPS is a chronic pain condition. The key symptom of RSD is continuous, intense pain out of proportion to the severity of the injury, which gets worse rather than better over time. RSD most often affects one of the arms, legs, hands, or feet. Often the pain spreads to include the entire arm or leg. Typical features include dramatic changes in the color and temperature of the skin over the affected limb or body part, accompanied by intense burning pain, skin sensitivity, sweating, and swelling. NINDS Complex Regional Pain Syndrome Information Page, (Sept. 24, 2014, 2:42 p.m.) http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/reflex_sympathetic_dystrophy.htm.

[2] Postural orthostatic tachycardia syndrome (POTS) is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting. In POTS, the lightheadedness or fainting is also accompanied by a rapid increase in heartbeat of more than 30 beats per minute, or a heart rate that exceeds 120 beats per minute, within 10 minutes of rising. The faintness or lightheadedness of POTS are relieved by lying down again. Anyone at any age can develop POTS, but the majority of individuals affected (between 75 and 80 percent) are women between the ages of 15 to 50 years of age. Some women report an increase in episodes of POTS right before their menstrual periods. POTS often begins after a pregnancy, major surgery, trauma, or a viral illness. NINDS Postural Tachycardia Syndrome Information Page, (Sept. 24, 2014, 2:46 p.m.), http://www.ninds.nih.gov/disorders/postural_tachycardia_syndrome/postural_tachycardia_syndrome.htm

CRPS. Dr. Nickerson also diagnosed Boling with POTS which was not caused by the thumb injury but was exacerbated by it.

A hearing on Boling's workers' compensation claim was held in October 2009. Boling testified that she could not work because she was unable to sit, stand, or walk for more than ninety minutes at a time. She also stated she suffered from frequent drops in blood pressure which caused her to become dizzy and lose consciousness.

After a review of the evidence, the ALJ issued an opinion which found that Boling had a 25% whole person impairment and that she could not return to work as a physical therapist. The ALJ also concluded that Boling's RSD and POTS were related to the work-related injury. She was awarded permanent partial disability ("PPD") benefits based on that impairment rating. The ALJ also awarded Boling the three multiplier pursuant to KRS 342.730(1)(c)1.

Boling and EPI both appealed the ALJ's decision to the Workers' Compensation Board. Before the Board could issue an opinion, EPI filed a motion to reopen Boling's award. EPI based this motion on new evidence from Dr. Breidenbach which indicated that Boling's condition had improved and therefore the PPD award needed to be reevaluated. The Board partially remanded the case to the ALJ to consider the motion to reopen, but affirmed the finding that Boling was not permanently totally disabled. The ALJ[3] subsequently granted EPI's motion to reopen and a university evaluation was

---

[3] Former ALJ Smith was originally assigned to this case, but was replaced by ALJ Jones after the motion to reopen was granted.

scheduled. However, due to several delays Dr. Nickerson, who had some expertise on POTS, was no longer available to perform the second university evaluation. The ALJ believed that the new university evaluator was unqualified to render an opinion on the status of Boling's POTS and decided to move forward with the hearing before the evaluation was performed.

Records from Dr. Breidenbach, presented by EPI at the hearing, indicated that he now believed Boling's whole person impairment rating with respect to her thumb injury was 0%. In rebuttal, Boling submitted a note from Dr. Wood in which he stated that he continued to treat her for RSD and POTS, that her condition had not improved, and that he had not released her to work. He believed the prior impairment rating of 25% was still accurate. Boling testified that as a result of her POTS, she experiences nausea, fainting spells, sudden increases in blood pressure, and aggravation of the pain caused by her RSD. She also testified that out of financial need, she returned to work part time as a physical therapist in August 2010, but could not perform the job. Boling then took an administrative job in March 2011, but testified that she frequently misses work due to symptoms caused by POTS.

The ALJ rejected EPI's argument stating:

> [t]he ALJ concludes that Boling's original impairment rating assessed at 25% by Judge Smith entails consideration of a complex and rare medical diagnosis and the manner in which Boling's hand injury, RSD as diagnosed at the time, and POTS interact. Dr. Breindenbach is not qualified to offer an opinion on the entire set of diagnoses and their effects on Boling. His opinion then and now is but a small piece of a much larger medical puzzle. Even if the ALJ found his 0% impairment rating as related to the hand convincing, which she does not, this is not medical evidence that sufficiently establishes that Boling no longer suffers from

4

POTS, especially in light of Dr. Wood's opinion that the condition is still present and that her overall impairment rating has not improved.

In short, the ALJ concludes that EPI Corporation did not sustain its burden of proof on the issue of whether the prior PPD award should be reduced based on Dr. Breindenbach's 0% impairment rating.

The ALJ also performed an analysis pursuant to *Fawbush*, even though neither party requested one. Because both provisions of KRS 342.730(1)(c) could be applied in this case, the ALJ had the discretion to choose the multiplier. The ALJ chose the three multiplier from KRS 342.730(1)(c)1 as most appropriate because even though Boling was working and earning a higher wage than when she worked at EPI, the ALJ believed it was unlikely she would be able to continue earning such a wage in the foreseeable future. The Board and Court of Appeals affirmed and this appeal followed.

EPI argues on appeal that the ALJ's opinion and order must be vacated because it was not supported by credible or reliable evidence. In particular, EPI argues Boling's impairment rating should be lowered. Since it filed the motion to reopen, EPI bore the burden of proving every element of its claim. *House v. BJK Industries*, 103 S.W.3d 13, 16 (Ky. 2003). Additionally, the ALJ is given broad discretion to weigh the quality and substance of the evidence in making a determination. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). By applying the above standards, we find that EPI did not satisfy its burden.

EPI relies on Dr. Breidenbach's opinion to argue that Boling no longer suffers from an impairment due to her thumb injury. However, the ALJ

recognized that Boling's award and 25% whole person impairment rating were based not only on the thumb injury, but on the interaction between that injury, her RSD, and her POTS. The ALJ accordingly found Dr. Wood's opinion persuasive because he continued to treat Boling for RSD and POTS. She further considered Boling's own testimony that she continues to suffer from nausea, fainting spells, sudden increases in blood pressure, and aggravation of the pain caused by her RSD. The ALJ's finding that the original impairment rating did not need to be reduced was not unreasonable based upon the evidence presented.

Further, we find that the ALJ's *Fawbush* analysis did not lead to an erroneous outcome. EPI contends that since Boling has been working for over two years she should not be entitled to the three multiplier in KRS 342.730(1)(c)1. Boling also earns higher wages now than she did at EPI. But, the ALJ noted that Boling is currently employed in an administrative position and is unable to return to physical therapy, the job she performed when the work-related injury occurred. Boling testified that she returned to work out of financial necessity even though she had not been cleared to return to work by Dr. Wood, her POTS treating physician. She further testified that due to her condition she has difficulty working. Because of this evidence, it was not unreasonable for the ALJ to find that it would be unlikely for her to maintain her current full time position as a result of her health issues. *Fawbush*, 103 S.W.3d at 12. The determination of which multiplier to apply is within the discretion of the ALJ, and in the absence of clear error, that decision will not be

6

overturned. The Board and Court of Appeals did not err by affirming the ALJ's decision regarding the *Fawbush* analysis.

For the above stated reasons, we affirm the decision of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT,
EPI CORPORATION:

Laurie Goetz Kemp

COUNSEL FOR APPELLEE,
JENNIFER BOLING:

Tamara Todd Cotton
Stephanie Nicole Wolfinbarger