# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 15, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0262-WC

YAHAGI AMERICA MOLDING, INC.                                     APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
NO. 2021-CA-0154
WORKERS' COMPENSATION NO. 2017-WC-88379

JULIE A. CRAINE; CHRISTIAN UNICK,                              APPELLEES
PH.D.; RASESH DESAI &
INTERVENTIONAL PAIN SPECIALISTS;
HONORABLE TONYA MICHELLE
CLEMONS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Julie Craine alleged a work injury to her low back on March 1, 2017 while working as a packer for Yahagi America Molding, Inc., an automotive parts manufacturer. The Administrative Law Judge (ALJ) determined Craine's injury was compensable and awarded permanent partial disability benefits. The Workers' Compensation Board (Board) and Court of Appeals affirmed. Yahagi argues that the ALJ relied on an expert opinion that does not constitute substantial evidence and also misinterpreted and misapplied Kentucky law regarding pre-existing injuries.

## FACTS AND PROCEDURAL HISTORY

Julie Craine began working for Yahagi in October 2015. She began working for Yahagi through a temporary agency for a three-month span until she was hired on full time. Craine packaged car parts for approximately twelve to fourteen hours per day, six days per week for Yahagi and her work required lifting forty pounds and standing for long periods of time. On March 1, 2017, she reached into a box that was chest level and felt a pull in her low back with immediate stiffness and pain.

Prior to the work injury, in August 2014, Craine was involved in a motor vehicle accident resulting in a concussion and neck injury. In her deposition testimony, Craine originally denied injuring her low back in the accident. However, in her second deposition, she recalled having some back problems related to the 2014 incident. She stated that she was able to manage her symptoms and work without restrictions prior to the 2017 work injury.

Numerous medical records were submitted as evidence, including reports from diagnostic studies. Notably, an MRI dated August 30, 2013 showed spondylolisthesis at L5.[1] MRIs dated August 11, 2014 and October 15, 2014 also demonstrated spondylolysis and L5-S1 spondylolisthesis.[2] Additionally,

---

[1] "Spondylolisthesis is a spinal condition that causes lower back pain. It occurs when one of your vertebrae, the bones of your spine, slips out of place onto the vertebra below it." *Spondylolisthesis,* CLEVELAND CLINIC (Aug. 7, 2020) https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis.

[2] "Spondylolysis" is a spinal condition caused by stress fractures or cracks in spine bones. *Id.* While spondylolisthesis and spondylolysis both cause low back pain, they are not the same condition. *Id.*

L5-S1 spondylolisthesis was noted on MRIs dated March 1, 2017, taken after the work injury, and April 11, 2017.

After the 2014 motor vehicle accident, Craine treated with Dr. John Jones, a chiropractor, beginning on August 22, 2014. Craine visited Dr. Jones twenty-seven times between August 22, 2014 and December 15, 2014 and sixteen times between August 11, 2015 and May 9, 2016. During most of these visits, Craine reported some form of low back pain. Simultaneously, Craine treated with Heartland Physical Therapy from October 2014 to December 2014 and reported back pain. On December 3, 2014, Craine was discharged for non-compliance and poor attendance. She also reported low back pain to Dr. Swaranjit K. Chani on May 13 and 16, 2016.

In October 2016, Craine presented to Dr. Asad Fraser, a rheumatologist, and checked a box on an intake form stating she experienced back pain within the last month. She checked this same box during subsequent visits on November 18, 2016, and December 28, 2016, and noted that her overall pain, in her back and other areas, was "as bad as it could be." In her sworn testimony, Craine stated that she believed these 2016 bouts of back pain were attributable to her rheumatoid arthritis.

After the work injury, Craine sought treatment from Dr. Rasesh Dasai on May 18, 2017. Craine reported that since the work incident, her pain was constant and severe. Dr. Dasai assessed spondylolisthesis of the lumbar region. He noted a comparison of a March x-ray to the May 18, 2017 x-ray showed a progression of the previous spondylolisthesis. Dr. Dasai

3

administered a lumbar epidural injection on July 24, 2017. Although he recommended additional injections, those were denied by her employer. Dr. Desai performed a lumbar fusion on June 25, 2018 at L4-L5 and L5-S1. Since her surgery, she testified that she is unable to stand over ten to fifteen minutes and cannot perform household chores without breaks.

Dr. Thomas O'Brien evaluated Craine on August 18, 2017, prior to the fusion surgery. Dr. O'Brien summarized voluminous treatment and diagnostic records predating the alleged work injury, as well as those following the injury. Ultimately, Dr. O'Brien diagnosed chronic low back pain secondary to congenital L5-S1 spondylolisthesis and multilevel degenerative disc disease. According to Dr. O'Brien, Craine did not sustain a work-related injury on March 1, 2017 and the incident on that date was a manifestation and natural progression of degenerative disc disease. Dr. O'Brien noted that a 2017 MRI showed the same multilevel degenerative changes and congenital defect that was apparent on the October 14, 2014 MRI.

Similarly, x-rays of the lumbar spine on October 26, 2016 showed the same degenerative changes and congenital defect that were apparent on subsequent imaging studies after March 1, 2017. Dr. O'Brien further noted that Craine had five out of five positive Wadell's signs, supporting a non-organic, non-physiologic or anatomic basis for assigning restrictions. Dr. O'Brien assigned a 0% impairment rating related to the alleged injury pursuant to the *Fifth Edition of the AMA Guides to the Evaluation of Permanent Impairment (Guides).*

Dr. Stephen Neely examined Craine on March 13, 2018, prior to the fusion surgery. Craine described the work injury and Dr. Neely reviewed medical records and x-rays. Dr. Neely diagnosed an exacerbation of Craine's pre-existing spondylolisthesis, progressed from Grade I to Grade II, and assigned an 8% impairment rating. He opined that Dr. Desai was best situated to determine whether Craine should undergo the spinal fusion surgery. In a supplemental report, Dr. Neely stated the work incident proximately caused a harmful change to the human organism based on objective medical findings.

Dr. Thomas Loeb evaluated Craine on September 17, 2019, approximately fifteen months after her fusion surgery. Dr. Loeb stated that Craine had longstanding active and pre-existing congenital spondylolisthesis at L5-S1 with post-laminectomy syndrome. He did not believe the work incident caused, nor exacerbated, her underlying longstanding, active, pre-existing problem. Dr. Loeb opined that Craine reached maximum medical improvement approximately four to six weeks after the work injury. Although he noted the difficulty in stating her pre-injury impairment due to lack of measurements regarding change from flexion to extension on radiographs, he assessed a pre-surgery impairment of 20%. He assessed a 23% post-fusion impairment rating. Dr. Loeb did not believe Craine required any restrictions due to the work-related injury.

Dr. Robert Landsberg examined Craine at the request of her attorney on September 18, 2019. He diagnosed Craine with aggravation and advancement of a pre-existing spondylolytic spondylolisthesis of the lumbar spine secondary

5

to the work injury. Dr. Landsberg assessed a 23% impairment rating under the DRE method and determined that Craine was completely disabled with the lumbar injury. He recommended several restrictions, including no bending and no sitting for more than twenty-five minutes at a time.

Yahagi hired William Hagan, a private investigator, to observe Craine. Between October 14, 2019, and November 26, 2019, Hagan observed Craine on several occasions performing a variety of activities, including climbing in and out of her SUV without assistance, driving to a McDonald's drive thru, feeding chickens, visiting a local store, driving her mother to a local hospital, and pumping gas. He also observed Craine go to a bingo hall and play bingo for several hours. In a March 9, 2020 addendum submitted after review of Hagan's surveillance video, Dr. Landsberg maintained his opinion that Craine suffered an aggravation of a pre-existing, relatively dormant condition that was brought into a disabling reality by the work incident.

The parties stipulated that Craine sustained a work-related injury on March 1, 2017, but contested the permanency of her injury and whether she had a pre-existing condition, among other issues. The ALJ noted that Craine had pre-existing conditions of L5/S1 spondylolisthesis and rheumatoid arthritis, which Craine asserted mainly impacts her hands. Craine was able to work in her regular position pre-injury for forty hours per week with significant overtime. But on March 1, 2017, she suffered an injury that led to conditions that did not subside.

6

The parties disputed whether the ALJ should carve out any degree of impairment for a pre-existing condition. Craine argued that she is permanently and totally disabled due to the work injury, suffering a 23% impairment rating. Yahagi argued that Craine had a pre-existing, active condition that accounted for either 8% or 20% of Craine's impairment rating. The ALJ found Craine to be a credible witness. Craine testified that she continues to have pain in her low back that was more severe after the work incident. She also testified that she was fully functional and without physical limitation to her low back before the incident. The ALJ concluded that Craine has a 23% whole person impairment attributable to the work injury and that any pre-existing low back conditions were permanently exacerbated by the March 1, 2017 work injury. Further, the June 25, 2018 L4/L5 and L5/S1 spinal fusion was related to the work injury and thus compensable by Yahagi.

On October 12, 2020, the ALJ denied Yahagi's petition for reconsideration. Yahagi's petition argued the ALJ erred by failing to apportion for Craine's pre-existing, active impairment pursuant to *Finley v. DBM Technologies,* 217 S.W.3d 261 (Ky. App. 2007). The ALJ stated that the evidence did not persuade her that Craine's back condition was symptomatic immediately prior to the injury. The ALJ reiterated her opinion that Craine was working without restrictions and had no recommended procedures, nor was she treating with a physician, for her low back immediately prior to the March 1, 2017 injury.

7

Yahagi appealed to the Board and argued that the ALJ erred by misconstruing evidence and failed to conduct the proper analysis for pre-existing conditions pursuant to *Finley,* 217 S.W.3d 261. The Board noted that although the ALJ did not cite to *Finley,* she demonstrated that she understood the law, burden of proof, and the evidence. There was conflicting evidence regarding whether Craine was symptomatic prior to the work injury, including the various medical records submitted by Yahagi indicating medical treatment and medications received by Craine prior to March 1, 2017. Conversely, Craine testified that she was not suffering from her lumbar condition at the time of the March 1, 2017 injury and was able to work significant overtime. Ultimately, the Board held that the ALJ performed the proper analysis to reach the determination that Yahagi did not meet its burden of proving Craine was suffering from a pre-existing active lumbar condition.

On appeal to the Court of Appeals, Yahagi advanced the same arguments, arguing specifically that the ALJ erroneously relied on Dr. Landsberg's opinion, who Yahagi asserts "clearly and objectively [did] not have a fully accurate and complete medical history regarding the pre-injury condition of Craine's lower back," and that it proved that Craine's lumbar condition was symptomatic and impairment ratable prior to the work injury. The Court of Appeals held that Dr. Landsberg had the opportunity to examine Craine and review evidence noting the pre-existing condition of her low back. "[T]he amount of knowledge that Dr. Landsberg had regarding the cause and pre-existing condition of Craine's low back condition goes to the overall weight

8

that the ALJ chose to afford his opinion." Additionally, the Court of Appeals adopted the Board's analysis and holding regarding the pre-existing condition, concluding that the ALJ's determination that Craine did not suffer from a symptomatic and impairment-ratable condition immediately prior to the work injury was supported by substantial evidence. This appeal followed.

## ANALYSIS

The ALJ, as fact-finder, has the sole authority to determine the quality, character, and substance of the evidence. *Square D Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky. 1993). On appellate review, the issue is whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland,* 998 S.W.2d 479, 481-82 (Ky. 1999). Substantial evidence is evidence of "substance and relevant consequence" having fitness to induce conviction in the minds of reasonable people. *Miller v. Tema Isenmann, Inc.,* 542 S.W.3d 265, 270 (Ky. 2018). "[T]he ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding." *Finley,* 217 S.W.3d at 264.

The primary issue is whether Craine suffered from a pre-existing condition that should have been "carved out" of her whole person impairment rating and whether the ALJ conducted a proper analysis pursuant to *Finley*. *Id.* This Court affirmed the *Finley* holding regarding pre-existing conditions in *Wetherby v. Amazon,* 580 S.W.3d 521, 526 (Ky. 2019) and explained that

> [t]o be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA *Guidelines* immediately prior to the occurrence of the work-

9

related injury. Moreover, the burden of proving the existence of a pre-existing condition falls upon the employer.

(Internal citations omitted). Therefore, Yahagi has the burden of proving that Craine had a pre-existing condition. "[F]or a dormant condition to produce a compensable claim, all of the employee's permanent impairment must be medically determined to have arisen after that event, i.e., the current work injury." *Id.* at 527 (internal quotation omitted).[3]

The ALJ stated that, based on medical records and testimony, Craine had pre-existing conditions of L5/S1 spondylolisthesis and rheumatoid arthritis that mainly affected her hands, but that these symptoms were "episodic at best." The ALJ relied on Craine's ability to work approximately forty hours per week in 2016 and 2017 leading up to the work injury, often working additional overtime hours.[4] Additionally, Craine testified that she was

---

[3] *Wetherby* involved a claimant whose condition was impairment ratable, but asymptomatic prior to his work injury. Therefore, it was not an active pre-existing condition, but it also did not qualify as a dormant condition aroused by the work injury because "'all of the employee's permanent impairment' could *not* be 'medically determined to have arisen after that event,' *i.e.,* the [work] injury." *Id.* at 527 (quoting *Finley,* 217 S.W.3d at 265). Wetherby's whole person impairment also included some impairment stemming from an injury that occurred over twenty years prior that necessitated fusion surgeries, which required deducting 25% of his impairment rating as attributable to the fusion surgeries pursuant to the *Guides. See also ViWin Tech Windows & Doors, Inc. v. Ivey,* 621 S.W.3d 153 (Ky. 2021).

[4] Craine did not work from July 12, 2016 through December 2, 2016 and testified that she missed work due to difficulties stemming from a hysterectomy procedure. However, her overtime hours in the three months preceding the March 1, 2017 injury were extensive. Craine averaged 15.5 overtime hours per week in December 2016, 19 overtime hours per week in January 2017, and 24 overtime hours per week in February 2017.

10

able to manage her symptoms without significant treatment prior to March 2017.[5]

The ALJ primarily relied on Dr. Landsberg in concluding that Craine did not suffer a pre-existing and active condition. Yahagi argues that Dr. Landsberg's opinion cannot constitute substantial evidence because Dr. Landsberg did not have Craine's full and accurate medical history. Dr. Landsberg examined Craine on September 18, 2019 and generated an eleven-page report. His report detailed Craine's history, including the 2014 motor vehicle accident. Dr. Landsberg also outlined the records and notes he reviewed prior to forming his opinion: (1) medical evaluation report of Dr. Neely; (2) medical evaluation report of Dr. O'Brien; (3) notes and records of Dr. Desai; (4) notes and records of Interventional Pain Specialists, where Craine went for treatment on referral from Dr. Desai intermittently in 2017, 2018 and 2019; (5) notes and records of TJ Health Partners, where Craine was treated in March and April 2017; (6) MRI of the Lumbar spine from April 11, 2017, which included comparison to the October 15, 2014 MRI; (7) notes and records from The Medical Center at Bowling Green, where Craine visited for a post-operation exam following a non-work-related procedure. Notably, Dr. O'Brien's evaluation report detailed Craine's past treatment, including:

---

[5] We note that the ALJ erroneously stated Craine only sought treatment after her motor vehicle accident eleven times between August 2014 and December 2016. In supplying Craine's records, Dr. Jones submitted a table of contents that noted the eleven months in which Craine sought treatment with his office. However, many of those months include multiple treatment visits. For example, Craine treated with Dr. Jones in September 2014 on September 4, 5, 9, 15, 16, 18, 23, and 25.

8/11/2014 – Note from T.J. Sampson Urgent Care. She was involved in a motor vehicle accident. Complaints included right-sided back pain . . . .

8/22/2014 – 5/19/2016 – Multiple notes from the Chiropractor John Jones of Glasgow, Kentucky. Complaints included chronic mid and low back pain. By May 19, 2016, it states she was still in moderate to severe pain and he recommended ongoing treatments

10/14/2014 – Note from Hartland [sic] Rehabilitation. She as referred by Dr. Umar Khan. Complaints included "unremitting neck and back pain." She had been treating with a chiropractor. She had an MRI scan scheduled. . . .

10/21/2014 – Note from Hartland [sic] Rehabilitation in Glasgow, Kentucky. Complaints included dizziness as well as low back pain and neck pain.

10/26/2016 – Note from Dr. Asad Fraser. Complaints included right-sided back pain. . .

10/26/2016 – X-rays of the lumbar spine shows a grade I spondylolisthesis with degenerative disc disease.

Dr. Landsberg conducted a physical examination and ultimately concluded that Craine suffered "aggravation and advancement of a pre-existing spondylolytic spondylolisthesis of the lumbar spine secondary to a 3/1/17 work injury, with ongoing back pain and stiffness." Accordingly, Dr. Landsberg opined that Craine's pre-existing and relatively dormant condition was aggravated and advanced to a disabling reality by the work injury.[6] Throughout his report, Dr. Landsberg made six references to the 2014 motor

---

[6] We also note that the *Guides* include a chart containing criteria for rating impairment due to lumbar spine injuries. That chart automatically places a claimant in DRE Lumbar Category IV, requiring a 20-23% impairment rating, if they have "complete or near complete loss of motion of a motion segment due to developmental fusion. . . ." *Guides,* p. 384. Dr. Landsberg stated that, following a lumbar fusion, Craine fit into this category.

vehicle accident and the treatment Craine received thereafter, which predated the work injury. Clearly Dr. Landsberg was aware of the 2014 accident and resulting treatment, which we can only assume he considered in reaching his medical conclusions.

Yahagi argues this case is like *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839, 840 (Ky. 2004). In *Cepero,* an employee suffered a serious injury three years prior to a work injury. *Id.* In pursuing a claim for compensation, the employee provided contradictory information about his medical history, did not disclose his past injury to the examining physicians and lied during his deposition by denying the injury and being wheelchair bound for two months thereafter. *Id.* at 841. The ALJ determined the work injury was compensable and the Board reversed, finding that the ALJ's conclusion as to causation was not supported by substantial evidence. *Id.* at 842.

The complete omission of a significant and relevant prior injury in *Cepero* is distinguishable from this case. Although there is no indication that Dr. Landsberg personally reviewed Dr. Jones' or Dr. Fraser's records, or Dr. Loeb's report, he clearly was aware of the 2014 motor vehicle accident. Further, Dr. O'Brien's report, which Dr. Landsberg referenced having reviewed in his report, included information about Craine's complaints and treatment after the motor vehicle accident and as recently as October 2016. Therefore, Dr. Landsberg was not confronted with personal medical history that was "substantially inaccurate or largely incomplete." *Cepero,* 132 S.W.3d at 842. In addition, Dr. Landsberg was aware of Craine's prior injuries and had the opportunity to

13

examine Craine as well as review prior records. We cannot conclude that his report was corrupt and therefore incapable of constituting substantial evidence.

Yahagi also highlights that Craine was diagnosed with Grade I spondylolisthesis after the 2014 motor vehicle accident. In discussing spinal impairments and procedures for examinations, the *Guides*, p. 383-84, state that

> The DRE method recommends that physicians document physiologic and structural impairments relating to injuries or diseases other than common developmental findings, such as (1) spondylolysis, found normally in 7% of adults; (2) **spondylolisthesis**, found in 3% of adults . . . As previously noted, **the presence of these abnormalities on imaging studies does not necessarily mean the individual has an impairment due to an injury.**
>
> In cases where the abnormalities discussed above are present on imaging studies and are known or assumed to have preexisted an injury being rated, physicians should acknowledge these antecedent conditions. If requested, physicians may need to assess whether the condition was previously symptomatic and whether any aggravation occurred as a result of the injury.

(Emphasis added). As such, the presence of spondylolisthesis does not automatically result in impairment. Nevertheless, physicians are required to acknowledge conditions such as spondylolisthesis and, pursuant to our prior holdings, determine whether the condition is active, i.e., symptomatic and impairment ratable, immediately prior to the work injury. *See Wetherby,* 580 S.W.3d at 526.

"Where, as here, the medical evidence is conflicting, the question of which evidence to believe is the exclusive province of the ALJ." *Square D Co.,*

14

862 S.W.2d at 309 (citing *Pruitt v. Bugg Bros.,* 547 S.W.2d 123 (Ky. 1977)). Ultimately, the ALJ was confronted with conflicting evidence to consider in determining whether Craine suffered from a pre-existing, active condition. Both Dr. Loeb and Dr. O'Brien assessed an impairment rating they opined was attributable to Craine's pre-existing condition, making the condition impairment ratable, thus satisfying half of the two-part *Finley* requirement. *Wetherby,* 580 S.W.3d at 526. But whether her condition was symptomatic immediately prior to the work injury is debatable.

"On appellate review, the ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding." *Plumley v. Kroger,* 557 S.W.3d 905, 909 (Ky. 2018) (internal citations omitted). Despite Craine's medical history, and documented spondylolisthesis on the 2014 and 2017 MRIs, the ALJ was convinced that Craine was asymptomatic prior to the work injury, noting Craine's testimony that she was fully functional and without physical limitation to her low back before that incident. The ALJ also noted Craine's wage records, which indicated she returned to work in December 2016 and worked more than forty hours per week.[7] Although there was evidence supporting Yahagi's contention that Craine was symptomatic immediately prior to the work injury, the ALJ was tasked with considering all evidence and choosing which evidence to believe.

---

[7] *See supra* note 4.

*Square D Co.,* 862 S.W.2d at 309.  Giving the conflicting evidence, we must defer to the ALJ's fact finding.  *Plumley,* 557 S.W.3d at 909.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Sherri Lynn Keller
Fogle Keller Purdy, PLLC


COUNSEL FOR APPELLEE,
JULIE A. CRAINE:

Donald D. Zuccarello
Law Office of Donald D. Zuccarello, PLLC

ADMINISTRATIVE LAW JUDGE:

Hon. Tonya Michelle Clemons

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman