# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: FEBRUARY 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0248-WC

ELLIS JOINER        APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2025-CA-0237
WORKERS' COMPENSATION BOARD
NO. WC-22-00713

MAC CONSTRUCTION &        APPELLEES
EXCAVATION; HONORABLE PHILLIPE
RICH, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

In this workers' compensation appeal, Ellis Joiner argues that the Administrative Law Judge (ALJ) erred by failing to adopt impairment ratings for his left shoulder and cervical spine. Joiner, a carpenter employed by MAC Construction, fell off a ladder while on the job and sustained multiple injuries. The ALJ awarded temporary total disability benefits, permanent partial disability benefits, and medical expenses. Joiner asserted that he was also entitled to compensation for injuries he sustained to his left shoulder and cervical spine, but the ALJ did not award benefits for these injuries. On appeal, both the Workers' Compensation Board (Board) and the Court of

Appeals affirmed the Opinion, Award and Order of the ALJ. Because the ALJ appropriately relied on evidence of record to render his decision, we likewise affirm.

## FACTS AND PROCEDURAL HISTORY

Ellis Joiner began working as a carpenter for MAC Construction in 2016. He worked on large commercial jobs, which required working with tools, lifting up to fifty pounds, bending, squatting, lots of overhead work, and work on ladders. On July 15, 2020, he was on an extension ladder that fell, causing him to fall on his right arm and wrist onto a concrete structure and then further down into a pit.

The following day, Joiner sought treatment at a local hospital. In the ensuing months, Joiner underwent several upper extremity surgeries, including a left rotator cuff repair in November 2022, attended numerous physical therapy sessions, received injections, and took several prescription medications. Joiner returned to work for MAC Construction on a light-duty basis on August 29, 2020, and last worked for MAC Construction on November 5, 2022.

Joiner filed a workers' compensation claim alleging injuries to both shoulders, right wrist, left elbow, and back. The parties submitted competing expert opinions regarding the degree of Joiner's impairment to various parts of his body. Pertinent to this appeal, Joiner submitted the medical report of Dr. Jules Barefoot who assessed a 37% whole person impairment rating, which included a 4% impairment for the left shoulder and an 8% impairment for the

cervical spine. MAC Construction submitted the report of Dr. Ellen Ballard, who assessed a total whole person impairment rating of 12%, but did not assess any impairment to either shoulder or the cervical spine. Dr. Ballard concluded that Joiner was "inconsistent with his shoulder motion" and therefore she could not calculate an impairment for his shoulders. However, because she reviewed records from the physician who performed the shoulder surgeries, she asserted there was no evidence of any shoulder impairment. Dr. Scott Kuiper, the physician who performed rotator cuff repairs on both of Joiner's shoulders, assigned a 1% whole person impairment rating, which he attributed to the upper extremity but failed to identify whether the impairment was attributable to the right or left upper extremity.

Ultimately, the ALJ awarded temporary total disability benefits, permanent partial disability benefits, and medical benefits. As to permanent partial disability benefits, the ALJ assigned a 24% impairment rating, which comprised of the following: 1% impairment for the left bicep and elbow, as assigned by Dr. Huey Tien; 14% for the right shoulder and wrist, as assigned by Dr. Barefoot; and 5% impairment each for the thoracic and lumbar injuries, as assigned by Dr. Ballard.[1] The ALJ stated he was not persuaded that Joiner sustained a cervical injury, relying on the medical records of Drs. Aaron Compton and Venu Vemuri who only recorded and treated thoracic and lumbar

---

[1] We acknowledge that the ALJ's calculation of Joiner's total whole person impairment of 24% is seemingly inaccurate (1% + 14% + 5% + 5% = 25%). Yet in the Opinion, Award and Order the ALJ consistently references a 24% total impairment rating. No party has addressed this inconsistency, and we therefore accept the 24% impairment rating.

complaints in the initial months following the July 15, 2020 work injury. Joiner filed a petition for reconsideration arguing, in pertinent part, that the ALJ erred by failing to address impairment ratings for his left shoulder and cervical spine.

The ALJ's Opinion, Award and Order explained he adopted Dr. Tien's impairment rating for the left upper extremity. The left upper extremity generally includes the shoulder, arm, forearm, wrist, and hand.[2] The ALJ found it significant that Dr. Tien released Joiner without restriction on the left upper extremity. Upon review of Dr. Tien's report, this assessed impairment rating was not for the left shoulder, but rather the left elbow. In his Order on reconsideration, the ALJ noted that Dr. Kuiper assigned a 1% impairment rating for Joiner's shoulders, but did not specify to which shoulder the rating applied. The ALJ determined it was reasonable to infer that the impairment rating was for the right shoulder, since Joiner suffered a full thickness rotator cuff tear in that shoulder. Thus, the ALJ concluded that it was also reasonable to infer that Dr. Kuiper did not assign an impairment rating for the left shoulder. As such, it seems apparent that the ALJ likewise did not assign an impairment rating for Joiner's left shoulder and the only left-sided impairment rating adopted was the 1% impairment rating for the left elbow as assessed by Dr. Tien.

---

[2] Dr. Tien assigned Joiner's left upper extremity rating in April 2022. Joiner later underwent surgery for his left shoulder in November 2022.

As for the cervical spine, in ruling on Joiner's petition for reconsideration the ALJ acknowledged Joiner's proffered evidence of his cervical symptoms dated November 2020. However, the ALJ emphasized that Joiner's four-month delay in reporting these symptoms, as well as the fact that Dr. Compton initially ordered only MRI scans of the lumbar and thoracic spine, supported the conclusion that Joiner did not sustain a significant cervical injury.

Joiner appealed to the Board, asserting that the ALJ erred by failing to assess impairment ratings for his left shoulder and cervical spine. The Board affirmed the ALJ, concluding that the ALJ properly analyzed the evidence and explained the basis for his decision. Further, the Board opined that the ALJ's decision was supported by substantial evidence and that the law was properly applied. Joiner then appealed to the Court of Appeals, raising the same two issues. The Court of Appeals affirmed the Board, and this appeal followed.

## ANALYSIS

In a workers' compensation case, the claimant has the burden of proving every element of his claim. *Gibbs v. Premier Scale Co./Ind. Scale Co.,* 50 S.W.3d 754, 763 (Ky. 2001). "A party who fails to meet its burden before the ALJ must show on appeal that the unfavorable finding was clearly erroneous because overwhelming evidence compelled a favorable finding, *i.e.,* that no reasonable person could have failed to be persuaded by the favorable evidence." *Kroger v. Ligon,* 338 S.W.3d 269, 273 (Ky. 2011). Because Joiner failed in proving compensable left shoulder and cervical spine injuries, he must show that overwhelming evidence compelled a finding in his favor, i.e., that he was

5

entitled to impairment ratings for his left shoulder and cervical spine. We address Joiner's arguments in turn.

## I. The ALJ appropriately relied on evidence of record in determining no impairment rating was warranted for Joiner's left shoulder.

At the outset, we note that "[i]f the fact-finder finds against the person with the burden of proof, [her] burden on appeal is infinitely greater." S*pecial Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986). The ALJ found against Joiner regarding his left shoulder, resulting in a steep burden on appeal. Joiner clearly sustained several serious injuries from his fall, for which the ALJ awarded temporary total disability, permanent partial disability, and medical benefits. But the ALJ was simply—and reasonably—not persuaded that Joiner sustained a left shoulder injury.

When reviewing the ALJ's findings of fact, we must give their findings considerable deference. *Plumley v. Kroger, Inc.,* 557 S.W.3d 905, 909 (Ky. 2018). The ALJ reviewed the totality of the evidence and found that Joiner did not sustain a compensable impairment to his left shoulder. "It is of no avail in such a case to show that there was some evidence of substance which would have justified a finding in his favor." *Special Fund,* 708 S.W.2d at 643. The ALJ considered Dr. Barefoot's report, which assessed a 4% impairment rating for the left shoulder, and nevertheless declined to adopt her assessment. "The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming,* 520 S.W.3d 382, 386 (Ky. 2017). The ALJ would have been

authorized to rely on the findings and conclusions of Dr. Barefoot to determine that Joiner suffered an impairment-ratable left shoulder injury, but he was not so persuaded. Here, the ALJ chose to rely on the experts that opined Joiner did not suffer a compensable impairment to his left shoulder. While there was evidence of a left shoulder injury, namely Dr. Barefoot's assessed 4% impairment rating, the evidence was not so overwhelming as to compel a finding in Joiner's favor.

Here, the ALJ, Board, and Court of Appeals all reached the same conclusion – that Joiner was not entitled to an award for left shoulder impairment. In *Western Baptist Hospital v. Kelly*, this Court explained

> [t]he WCB is suppose [sic] to decide whether the evidence is sufficient to support a particular finding made by the ALJ, or whether such evidence as there was before the ALJ should be viewed as uncontradicted and compelling a different result. These are judgment calls. No purpose is served by second-guessing such judgment calls, let alone third-guessing them. . . . [T]he body performing further review is there to address new problems, not to redecide the same evidentiary questions.

827 S.W.2d 685, 687 (Ky. 1992). The purpose of our review is not to supplant the ALJ's findings, but instead to determine whether overwhelming evidence required a finding in Joiner's favor. *Kroger,* 338 S.W.3d at 273.

An ALJ "has the authority to draw inferences from the evidence." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 271 (Ky. 2018). The ALJ's inference that Dr. Kuiper's 1% assessed impairment rating applied to the right shoulder only was a reasonable inference drawn from his review of the evidence. [3] Dr.

---

[3] We also note that several experts believed Joiner's right upper extremity condition was more severe than the left upper extremity condition. Dr. Tien assessed

7

Ballard concluded that Joiner was not entitled to an impairment rating for either shoulder per the mandates of the American Medical Association's *Guides to the Evaluation of Permanent Impairment*.[4] She noted that Joiner's impairment for shoulder conditions could not be assessed under the *Guides,* due to inconsistent motion measurements while testing. As Dr. Ballard noted in her report, range of motion testing must provide a reliable basis for assessment of impairment:

> Consistency tests are designed to ensure reproducibility and greater accuracy. These measurements . . . are good but imperfect indicators of people's efforts. The physician must use the entire range of clinical skill and judgment when assessing whether or not the measurements or tests results are plausible and consistent with the impairment being evaluated. If, in spite of an observation or test result, the medical evidence appears insufficient to verify that an impairment of a certain magnitude exists, the physician may modify the impairment rating accordingly and then describe and explain the reason for the modification in writing.

American Medical Association, *Guides to the Evaluation of Permanent Impairment,* 5th ed. The ALJ was permitted to rely on this evidence and explanation in reaching his conclusion that no impairment rating for the left shoulder was warranted.

Joiner's claims were not exclusive to which doctor's evaluation the ALJ chose to believe, but rather focused on the lack of explanation in those reports.

---

8% impairment for the right upper extremity, but only 1% for the left upper extremity. Dr. Barefoot assessed 14% impairment for the right upper extremity, and 6% impairment for the left upper extremity.

[4] These *Guides* provide repeatable measurement framework for physicians to utilize in assessing permanent impairment in patients who have suffered an injury resulting in long-term loss or reduction of body function. Kentucky Revised Statute (KRS) 342.0011(35) requires that any permanent impairment rating be determined by the *Guides.*

Admittedly, the ALJ made no mention of Joiner's alleged left shoulder impairment in his Opinion, Award and Order, and even on reconsideration gave short shrift to explaining why the alleged left shoulder injury did not deserve an impairment rating and therefore was not compensable. Best practices would have been for the ALJ to explicitly state he determined there was no work-related impairment to the left shoulder and cite to evidence of record to support such a conclusion. However, while an ALJ must effectively set forth adequate findings of fact from the evidence to apprise the parties of the basis for a decision, he is not required to recount the record with line-by-line specificity, nor engage in a detailed explanation of the minutia of his reasoning in reaching a particular result. *Shields v. Pittsburgh and Midway Coal Mining Co.,* 634 S.W.2d 440, 444 (Ky. App. 1982); *Big Sandy Cmty. Action Program v. Chaffins*, 502 S.W.2d 526, 531 (Ky. 1973). In any event, given that the evidence of record supports the ALJ's conclusion that Joiner did not suffer from an impairment-ratable left shoulder condition, the ALJ did not err.

II.    **The ALJ appropriately relied on evidence of record in determining no impairment rating was warranted for Joiner's cervical spine.**

As with the asserted left shoulder injury, the ALJ was not convinced that Joiner suffered impairment-ratable injury to his cervical spine. In reaching his conclusion, the ALJ relied on the medical evidence of record, primarily the treatment histories of Drs. Compton and Vemuri.

Dr. Compton, a pain management specialist, began treating Joiner in August 2020. As the ALJ noted, Dr. Compton only initially ordered an MRI of

9

the thoracic and lumbar spine. Those MRIs revealed degenerative disc disease. Eventually, an MRI of the cervical spine conducted on November 10, 2022, revealed mild disc space narrowing with a bulge. Four days later, Dr. Compton reviewed the cervical MRI and recommended cervical epidural injections. Dr. Compton referred Joiner to Dr. Vemuri, who also recommended steroid injections. Joiner presented to Dr. Vemuri with low back and right leg pain. Joiner received two spinal injections but denied any benefit from them. A third injection led to a 50% reduction in symptoms. Dr. Vemuri returned Joiner to Dr. Compton's care, and Dr. Compton released Joiner to return to the office as needed as of May 2023. Further, a report by Advanced Practice Registered Nurse (APRN) Katherine Harrell on January 12, 2023 noted recommending cervical epidural injections for Joiner's reported cervical pain. Harrell recommended the same injections again on March 3, 2023.

The ALJ also emphasized that Drs. Compton and Vemuri only treated Joiner for thoracic and lumbar complaints in the initial months following the work accident. While the ALJ acknowledged that Joiner pointed to evidence of cervical symptoms in November 2020[5], the ALJ determined that the delay in symptoms, along with the fact that Dr. Compton only ordered testing of the thoracic and lumbar regions of the spine supported his determination that Joiner did not suffer a cervical injury.

---

[5] In his brief, Joiner asserts that on November 10, 2020, he visited Dr. Compton who noted cervical region pain. However, there is no indication of cervical pain in this treatment note, and the examination on that date was conducted by APRN Harrell.

10

As the Board noted, the only note from Dr. Compton himself in evidence referencing cervical or neck pain is from May 15, 2023, in which Dr. Compton noted Joiner's complaints of neck pain (onset October 24, 2022) and cervical radiculopathy (onset October 25, 2022). This was the first medical record from Dr. Compton indicating neck pain.[6] This documented neck pain onset of October 2022 is over two years after Joiner's July 15, 2020 workplace injury. While a note from certified physician assistant Melissa Parshall's office noted Joiner presented with complaints of right-sided neck and shoulder pain on April 11, 2022, the treatment and testing on that date concentrated on the right shoulder. A treatment note from a visit with Dr. Kuiper dated April 25, 2022 does not mention neck pain. In any event, April 2022 is still approximately twenty-one months after the workplace injury, and the evidence confirms a significant gap in time between the accident and the documented cervical spine issues. The ALJ found this delay in seeking treatment to be significant. Further, Dr. Ballard did not assess an impairment rating for the cervical spine.

While Dr. Barefoot assessed an 8% impairment rating for Joiner's cervical spine, we re-emphasize that it is not enough for Joiner to "show that there was some evidence of substance which would have justified a finding in his favor." *Special Fund,* 708 S.W.2d at 643. The ALJ, as fact-finder, has the sole authority to determine the quality, character, and substance of the

---

[6] Again, it is unclear where this November 2020 report of cervical symptoms is located in the record. *See* n.5.

11

evidence. *Square D Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky. 1993). Here, the ALJ properly considered all evidence of record and permissibly concluded that Joiner did not suffer an impairment-ratable and compensable injury to his cervical spine. Therefore, there was no error.

Finally, we note that Joiner asserts that because his claim included a neck injury, and his employer stipulated to a work injury and did not raise causation or work-relatedness as defenses, that the employer therefore stipulated to a work-related neck injury. However, it is well-settled that in a workers' compensation case, the claimant has the burden to prove every element of his claim. *Gibbs,* 50 S.W.3d at 763. An award of permanent partial disability requires that the assessed impairment rating be "caused by the injury" as "determined by the 'Guides to the Evaluation of Permanent Impairment.'" KRS 342.730(1)(b). If the impairment rating were not caused by the work injury, it would not be compensable. Therefore, Joiner was still required to prove a compensable cervical injury and cannot merely rely on a perceived stipulation by his employer.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' opinion upholding the ALJ's Opinion, Award and Order.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

Christopher P. Evensen
Evensen Law Office, LLC


COUNSEL FOR APPELLEE:

Lyn Douglas Powers
Fulton, Devlin & Powers, LLC


ADMINISTRATIVE LAW JUDGE:

Hon. Phillipe Rich


WORKERS' COMPENSATION BOARD:

Hon. Michael Wayne Alvey, Chairman